# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ADRIAN WILLIAMS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 18-9365** |
| **DARRYL VANNOY, WARDEN** | **SECTION: "M"(1)** |

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

## I. State Court Factual and Procedural Background

Petitioner, Adrian Williams, is a state prisoner incarcerated at the Louisiana State Penitentiary in Angola, Louisiana. On March 31, 2011, Williams was charged by a bill of indictment with second degree murder of Carl Grant in violation of La. Rev. Stat. § 14:30.1.[1] After hearings held on January 25, 2012 and February 24, 2012, the trial court denied petitioner's motion to suppress line up identifications.[2] Petitioner's first trial commenced on October 16, 2012, but

---

[1] State Rec., Vol. 7 of 13, Bill of Information dated March 31, 2011.
[2] State Rec., Vol. 1 of 13, Motion to Suppress Evidence of Identification dated February 1, 2011; Motion to Suppress, Confession, Identification and Physical Evidence dated June 9, 2011; minute entry dated January 25, 2012; minute

ended in a mistrial on October 17, 2012.[3]  After a second trial, a jury found petitioner guilty as

charged.[4]  On April 22, 2013, the trial court denied petitioner's motions for new trial and post

verdict judgment of acquittal.[5]  Petitioner filed a supplemental and amended motion for new trial

on May 8, 2013, alleging that members of the jury were observed sleeping during the trial.[6]  On

May 15, 2013, after a hearing, the trial court denied petitioner's amended motion for new trial and

sentenced petitioner to life imprisonment at hard labor.[7]

On November 12, 2014, the Louisiana Fifth Circuit Court of Appeal affirmed petitioner's

conviction and sentence, but remanded the matter for the Uniform Commitment Order to be

corrected to reflect the correct adjudication and offense dates.[8]  The Louisiana Supreme Court

denied writs without stated reasons on October 9, 2015.[9]  Petitioner did not file for a writ of

certiorari with the United States Supreme Court.  The trial court amended the minutes and

commitment on November 14, 2014.[10]

On November 17, 2016, petitioner filed an application for post-conviction relief with the

state district court raising the following claims for relief: (1) insufficient evidence supported his

conviction and his appellate counsel was ineffective for failing to fully brief the issue; (2)

---

entry dated February 24, 2012; State Rec., Vol. 2 of 13, transcript of January 25, 2012; transcript of February 24, 2012.

[3] State Rec., Vol. 3 of 13, trial transcript of October 17, 2012; State Rec., Vol. 7 of 13, minute entry dated October 16, 2012; minute entry dated October 17, 2012.

[4] State Rec., Vol. 7 of 13, minute entry dated February 22, 2013; minute entry dated February 25, 2013; minute entry dated February 26, 2013; minute entry dated February 27, 2013; verdict dated February 27, 2013; State Rec., Vol. 3 of 13, trial transcript of February 25, 2013; February 25, 2013; State Rec., Vol. 4 of 13, trial transcript of February 26, 2013; State Rec., Vol. 5 of 13, trial transcript of February 27, 2013; State Rec., Vol. 6 of 13, closing argument transcript of February 27, 2013..

[5] State Rec., Vol. 8 of 13, Motion for Post Verdict Judgment of Acquittal dated March 7, 2013; Motion for New Trial dated March 7, 2013; minute entry dated April 22, 2013.

[6] State Rec., Vol. 8 of 13, Motion to Supplement and Amend Defendant's Motion for New Trial dated May 8, 2013.

[7] State Rec., Vol. 8 of 13, minute entry dated May 15, 2013; commitment dated May 15, 2013; State Rec., Vol. 8 of 13, hearing transcript of May 15, 2013.

[8] State v. Williams, 164 So. 3d 904 (La. App. 5th Cir. 2014); State Rec., Vol. 5 of 13.

[9] State v. Williams, 178 So. 3d 999 (La. 2015); State Rec., Vol. 13 of 13.

[10] State Rec., Vol. 8 of 13, minute entry dated November 14, 2014; commitment dated November 14, 2014.

prosecutorial misconduct based on remarks made during closing arguments and ineffective assistance of trial counsel for failure to object to the remarks; and (3) the verdict was suspect due to a member of the jury sleeping during trial.[11] Petitioner filed a supplemental application for post-conviction relief on February 1, 2017, in which he alleged an additional claim of ineffective assistance of counsel for failure to investigate and subpoena witnesses.[12] On November March 9, 2017, the state district court found the claim of insufficient evidence had previously been disposed of on direct appeal, petitioner's claim of prosecutorial misconduct was procedurally barred and alternatively without merit, his claim regarding the sleeping juror was procedurally barred, and his ineffective assistance of counsel claims were without merit.[13]

On May 8, 2017, the Louisiana Fifth Circuit denied petitioner's writ application.[14] On June 8, 2017, petitioner filed an untimely writ application with the Louisiana Supreme Court.[15] The Louisiana Supreme Court denied relief on August 31, 2018.[16]

On October 8, 2018, petitioner filed the instant federal application seeking habeas corpus relief in which he asserts the following claims for relief:[17] (1) insufficiency of the evidence and ineffective assistance of appellate counsel for failing to fully present the issue of insufficiency of evidence on appeal; (2) the trial court erred in denying his motion to suppress identification; (3) the prosecutor's comments during closing arguments violated his constitutional rights and his

---

[11] State Rec., Vol. 9 of 13. Federal habeas courts must apply Louisiana's "mailbox rule" when determining the filing date of a Louisiana state court filing, and therefore such a document is considered "filed" as of the moment the prisoner "placed it in the prison mail system." Causey v. Cain, 450 F.3d 601, 607 (5th Cir. 2006). Petitioner states that he placed his application for post-conviction relief in the mail on November 17, 2016.

[12] State Rec., Vol. 9 of 13, Supplement to Application for Post Conviction Relief and Memorandum in Support dated February 1, 2017.

[13] State Rec., Vol. 9 of 13, Order dated March 9, 2017.

[14] Williams v. Vannoy, No. 17-KH-203 (La. App. 5th Cir. May 8, 2017); State Rec., Vol. 9 of 13.

[15] State Rec., Vol. 13 of 13, Application for Writ, 17 KH 1075, signed June 8, 2017.

[16] State ex rel. Williams v. State, 251 So.3d 1066 (La. 2018) (per curiam); State Rec. Vol. 13 of 13.

[17] Rec. Doc. 1. "A prisoner's habeas application is considered 'filed' when delivered to the prison authorities for mailing to the district court." Roberts v. Cockrell, 319 F.3d 690, 691 n.2 (5th Cir. 2003). Petitioner signed his petition and certificate of service on October 8, 2018. Rec. Doc. 1, pp. 9 and 63.

counsel was ineffective in failing to object to the comments; (4) the jury verdict was unconstitutional because one of the jurors fell asleep during the trial; and (5) counsel was ineffective for failing to investigate and subpoena witnesses.  The state has filed a response arguing that the application should be dismissed as untimely.[18]  The state alternatively contends that the claims are meritless or procedurally barred.  Petitioner filed a reply explaining the prison's lack of electricity caused his one-day delay in filing his writ application to the Louisiana Supreme Court.[19]

## II. Timeliness

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") generally requires that a petitioner bring his Section 2254 claims within one (1) year of the date on which his underlying criminal judgment becomes "final." 28 U.S.C. § 2244(d)(1)(A).[20]  On that point, the United States Fifth Circuit Court of Appeals has explained:

> The statute of limitations for bringing a federal habeas petition challenging a state conviction begins to run on "the date on which the [state] judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).  When a habeas petitioner has pursued relief on direct appeal through his state's highest court, his conviction becomes final ninety days after the highest court's judgment is entered, upon the expiration of time for filing an application for writ of certiorari with the United States Supreme Court.  Roberts v. Cockrell, 319 F.3d 690, 693 (5th Cir. 2003).

Butler v. Cain, 533 F.3d 314, 317 (5th Cir. 2008).

Here, the Louisiana Supreme Court denied petitioner's direct-review writ application on October 19, 2015.[21]  Accordingly, his state criminal judgment became final for AEDPA purposes, and his federal limitations period therefore commenced, on January 7, 2016, when his period

---

[18] Rec. Doc. 13.

[19] Rec. Doc. 14.

[20] Although 28 U.S.C. § 2244(d)(1) has alternative provisions providing for other events which can trigger the commencement of the statute of limitations, those alternative provisions are not applicable in the instant case.

[21] State v. Williams, 178 So.3d 999 (La. 2015); State Rec., Vol. 13 of 13.

expired for seeking review by the United States Supreme Court.  His limitations period then expired one year later on January 9, 2017[22], unless that deadline was extended through tolling.

Regarding the statute of limitations, the AEDPA expressly provides:  "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."  28 U.S.C. § 2244(d)(2).  The decisions of the Fifth Circuit and other federal courts have held that because this statute is a tolling provision, the time during which state court post-conviction proceedings are pending must merely be subtracted from the one-year limitations period:

> [Section] 2244(d)(2) provides that the period during which a properly filed state habeas application is pending must be excluded when calculating the one [-]year period.  Under the plain language of the statute, any time that passed between the time that [petitioner's] conviction became final and the time that his state application for habeas corpus was properly filed must be counted against the one [-]year period of limitation.

Flanagan v. Johnson, 154 F.3d 196, 199 n. 1 (5th Cir. 1998); accord Brisbane v. Beshears, 161 F.3d 1, 1998 WL 609926, at *1 (4th Cir. Aug. 27, 1998) (Table, Text in Westlaw); Gray v. Waters, 26 F. Supp.2d 771, 771-72 (D. Md. 1998).

In petitioner's case, after 314 days, petitioner statutorily tolled his federal limitations period by filing his application for post-conviction relief with the state district court on November 17, 2016.[23]  Tolling then continued uninterrupted for the duration of the post-conviction proceedings – so long as he sought supervisory review in a timely manner.  Grillette v. Warden, Winn

---

[22] Because January 7, 2017, fell on a Saturday, the federal limitations period was extended through the following Monday, January 9, 2017.  See Flanagan v. Johnson, 154 F.3d 196, 202 (5th Cir.1998) ("We hold that [Fed.R.Civ.P.] 6(a) applies to the computation of the one year limitation period in § 2244(d) of AEDPA."); Fed.R.Civ.P. 6(a) (if the last day of an applicable period is a Saturday, a Sunday, a legal holiday, or a day when the clerk's office is inaccessible, the period runs until the end of the next day that is not one of those days).

[23] State Rec., Vol. 9 of 13.

Correctional Center, 372 F.3d 765, 769-71 (5th Cir. 2004).  That qualifying phrase is of importance in the instant case.

The state district court denied petitioner's post-conviction application on March 9, 2017.[24] A litigant normally has only thirty days to seek review of such a denial by filing a writ application with the applicable Louisiana Court of Appeal.  See Louisiana Uniform Rules of the Courts of Appeal Rule 4-3.  Petitioner met that deadline when he filed his writ application with the Louisiana Fifth Circuit on April 7, 2017.[25]  The Louisiana Fifth Circuit Court of Appeal denied relief on May 8, 2017.[26]  Petitioner then had only thirty days to seek further review by the Louisiana Supreme Court.  See Louisiana Supreme Court Rule X, § 5(a).  Due to the prison's lack of electricity resulting in an inability to print his writ application, petitioner failed to meet that deadline by *one day*.[27]  The Louisiana Supreme Court nevertheless denied the writ application on the merits without addressing the issue of the writ's timeliness.  The question, therefore, is whether statutory tolling credit applies to a facially untimely Louisiana Supreme Court writ application denied by that court on the merits with no mention of the application's apparent untimeliness.

If statutory tolling credit applies under these circumstances, the time would be tolled from the date petitioner's post-conviction application was filed (November 17, 2016) until the date the Louisiana Supreme Court denied relief (August 31, 2018).  Thereafter, petitioner would have had fifty-one (51) days remaining to seek federal habeas corpus relief.  His federal application, which

---

[24] State Rec., Vol. 9 of 13, Order dated March 9, 2017.

[25] Petitioner's writ application was signed April 7, 2017.  State Rec., Vol. 12 of 13, writ application in case number 17-KH-203.

[26] Williams v. Vannoy, No. 17-KH-203 (La. App. 5th Cir. May 8, 2017); State Rec., Vol. 9 of 13.

[27] Although the writ application bears a date stamp of June 26, 2017, federal habeas courts must apply Louisiana's "mailbox rule" when determining the filing date of a Louisiana state court filing, and therefore such a document is considered "filed" as of the moment the prisoner "placed it in the prison mail system." Causey v. Cain, 450 F.3d 601, 607 (5th Cir. 2006).  Petitioner's Louisiana Supreme Court writ application was signed June 8, 2017, thirty-one days after the Court of Appeal denied relief.  State Rec., Vol. 13 of 13, writ application in case number 17 KH 1075, p. 2747.

was filed thirty-eight (38) days later, would be timely.  However, no controlling jurisprudence addresses the issue of whether a petitioner is entitled to statutory tolling for a facially untimely Louisiana Supreme Court writ application denied on the merits with no mention of the timeliness issue.

In light of the facts, the undersigned finds that it is appropriate to err on the side of caution when faced with such an unclear issue concerning timeliness in a federal habeas corpus proceeding.  See Fisher v. Johnson, 174 F.3d 710, 713 (5th Cir. 1999) ("We must be cautious not to apply the statute of limitations too harshly.  Dismissal of a first habeas petition is a particularly serious matter, for that dismissal denies the petitioner the protections of the Great Writ entirely, risking injury to an important interest in human liberty." (quotation marks omitted)).  Given these considerations, and because petitioner's underlying claims do not warrant relief in any event, the undersigned recommends that the Court pretermit a ruling on the timeliness issue out of an abundance of caution and instead simply deny the claims for the following reasons.[28]

### III. Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. § 2254.  Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both.  The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."  Bell v. Cone, 535 U.S. 685, 693 (2002).

---

[28] A federal habeas court may pretermit a ruling on timeliness when it can more easily dispose of a petition on other grounds.  See, e.g., Sokolowski v. Prince, Civ. Action No. 14-110, 2015 WL 631425, at *3 n.28 (E.D. La. Feb. 13, 2015); Gordon v. Cain, Civ. Action No. 12-1884, 2013 WL 3833076, at *2 n.22 (E.D. La. July 22, 2013); Brooks v. McCoy, No. 5:11-HC-2222-F, 2012 WL 3629233, at *4 (E.D.N.C. Aug. 22, 2012).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).  Courts have held that the " 'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning."  Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases. A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets, and footnotes omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has held: "[A] state-court decision is an unreasonable application of our clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." White v. Woodall, 134 S. Ct. 1697, 1705 (2014). However, the Supreme Court cautioned:

> Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error. Thus, if a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision. AEDPA's carefully constructed framework would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.

Id., at 1706 (citations and quotation marks omitted). Therefore, when the Supreme Court's "cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law." Wright v. Van Patten, 552 U.S. 120, 126 (2008) (quotation marks and brackets omitted). The Supreme Court has also expressly cautioned that "an unreasonable application is different from an incorrect one." Bell, 535 U.S. at 694. Accordingly, a state court's merely incorrect application of Supreme Court precedent simply does not warrant habeas relief. Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").

While the AEDPA standards of review are strict and narrow, they are purposely so. As the United States Supreme Court has held:

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.

> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal. As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

Harrington v. Richter, 562 U.S. 86, 102-03 (2011) (citations omitted; emphasis added); see also

Renico v. Lett, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants—and federal courts—

from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of

state courts.").

The Supreme Court has expressly warned that although "some federal judges find [28

U.S.C. § 2254(d)] too confining," it is nevertheless clear that "all federal judges must obey" the

law and apply the strictly deferential standards of review mandated therein. White, 134 S. Ct. at

1701.

## IV. Facts

On direct appeal, the Louisiana Fifth Circuit Court of Appeal summarized the facts of this

case as follows:

> In the late hours of December 4, 2010, Grayland Mitchell accompanied the victim, Carl Grant, to the Cozy Kit bar in Gretna where the victim was emceeing a party. Shortly before midnight, the victim was involved in an altercation with other individuals inside the bar. Mr. Mitchell tried to help the victim, and as the altercation moved outside, he and the victim tried to leave the scene. Mr. Mitchell heard two gunshots and realized that the victim was not behind him. While looking for his friend, an individual pointed a gun at his head and said, "You're not the one," and ran back toward the bar. Within seconds of the individual leaving, Mr. Mitchell heard seven or eight more gunshots, followed by somebody saying that the victim had been shot. Subsequently, Mr. Mitchell identified defendant from a

photographic lineup as the person who pointed a gun at his head the night of the victim's murder.

Shortly after midnight on December 5, 2010, Officer Roland Kindell of the Gretna Police Department responded to a report of gunfire at the Cozy Kit. Upon his arrival, he heard five to seven gunshots, but could not discern their origin as his view was obstructed by approximately 75 to 100 people gathered outside the bar. After speaking with several witnesses, Officer Kindell developed the defendant and Jason Elliot as suspects in the murder of the victim.

Sergeant Tris Lear was working a detail at a location near the Cozy Kit and heard "two distinct gunshots ring out in the air" and heard one of his police units responding to the Cozy Kit. Sergeant Lear responded to the scene to assist and speak with witnesses. Detective James Compton was also working a detail at a location near the Cozy Kit and responded to the scene when he heard a transmission that a homicide occurred at the Cozy Kit. Both officers interviewed individuals on the scene and relocated to headquarters to continue with some of the interviews.

Within hours of the murder, Nedra Berry identified defendant from a photographic lineup as the person who fired shots into the air and who was present at the time of the victim's murder. Arrest warrants were issued for Jason Elliot and defendant.

The next day, Nelson Duplessis and Jason Elliot, who had both been arrested in connection with the victim's murder, were being held in the same cell at the police station. Detective Shaun Vinson testified that this holding cell is monitored by audio and video surveillance for safety purposes. While monitoring this cell, Detective Vinson overheard Mr. Duplessis say, "Don't worry, I gave them the wrong name." Mr. Duplessis acknowledged being in the holding cell with Mr. Elliot, but denied ever making such a remark.[2]

[2] Mr. Duplessis testified that he was convicted in this case of accessory after the fact to second degree murder, in violation of La. R.S. 14:25:30.1, for which he received five years active probation.

As the investigation continued, on or about December 13, 2010, Aisha Wilford contacted the police and identified defendant by name as the gunman. Sergeant Lear met with Ms. Wilford and presented her with a photograph of defendant and another photograph of Mark Williams. On the photograph of defendant, Ms. Wilford inscribed: "This is the young man I saw shooting Carl Grant 7 times." On the photograph of Mark Williams, Ms. Wilford inscribed: "This is the person that was fighting Carl Grant on 12–04–2010. He is also (A.I.'s) brother."[3] Detective Louis Alvarez, who was present during the interview of Ms. Wilford, testified that she neither hesitated in her identification of defendant as the perpetrator nor in her identification of Mark Williams as a participant in the fight.

[3] Defendant's nickname is "A.I."

Subsequently, Ms. Wilford contacted the police again and changed her story. She told the police that based on a dream she had, she believed Mark Williams shot the victim, not defendant. The police offered Ms. Wilford the opportunity to recant her previous statement and provide a new one, but she refused and in a taped statement she maintained that defendant was the gunman.[29]

---

[29] Williams, 164 So. 3d at 906-908; State Rec. Vol. 5 of 13.

## IV. Petitioner's Claims[30]

## A. Sufficiency of the Evidence

Petitioner's first claim is that there was insufficient evidence to prove that he was in fact guilty of the crime of which he stands convicted. He further contends that the trial court erred in denying his motion for post-verdict judgment of acquittal. On direct appeal, the Louisiana Fifth Circuit Court of Appeal denied that claim, holding:

> In counseled assignments of error one through three, defendant argues that the verdict is contrary to the law and evidence, the district court erred in denying his motion for post-verdict judgment of acquittal, and the district court erred in denying his motion for new trial. In his first pro se assignment of error, defendant argues that the evidence is insufficient to support his conviction of second degree murder. In support of these four assignments of error, defendant presents one argument in which he submits that the evidence was insufficient to support his second degree murder conviction. He argues that the lack of physical and scientific evidence linking him to the crime as well as the conflicting and inconsistent testimony were insufficient to find him guilty beyond a reasonable doubt.
>
> A denial of a motion for new trial based on the verdict being contrary to the law and the evidence is not subject to review on appeal. State v. Bazley, 09–358 (La. App. 5 Cir. 1/11/11), 60 So.3d 7, 19, writ denied, 11–0282 (La. 6/17/11), 63 So.3d 1039. However, both the Louisiana Supreme Court and this Court have addressed the constitutional issue of the sufficiency of the evidence under this circumstance. Id. Therefore, we will address this assignment of error.
>
> Additionally, this Court has recognized that the question of sufficiency of the evidence is properly raised in the trial court by a motion for post-verdict judgment of acquittal. See State v. Thomas, 08–813 (La. App. 5 Cir. 4/28/09), 13 So.3d 603, 606 n. 3, writ denied, 09–1294 (La. 4/5/10), 31 So.3d 361. The record reflects that defendant argued that the evidence was insufficient in his motion for post-verdict judgment of acquittal.
>
> In reviewing the sufficiency of the evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Neal, 00–0674 (La.6/29/01), 796 So.2d 649, 657, cert. denied, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002); State v. Mickel, 09–953 (La. App. 5 Cir. 5/11/10), 41 So.3d 532, 534, writ denied, 10–1357 (La.1/7/11), 52 So.3d 885.

---

[30] For ease of analysis, this Report and Recommendation addresses petitioner's ineffective assistance of counsel claims together rather than in the order they were listed in his federal petition.

The reviewing court is not permitted to re-evaluate the credibility of witnesses or re-weigh the evidence. State v. Caffrey, 08–717 (La. App. 5 Cir. 5/12/09), 15 So.3d 198, 202, writ denied, 09–1305 (La.2/5/10), 27 So.3d 297. The resolution of conflicting testimony rests solely with the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. See State v. Bailey, 04–85 (La. App. 5 Cir. 5/26/04), 875 So.2d 949, 955, writ denied, 04–1605 (La.11/15/04), 887 So.2d 476, cert. denied, 546 U.S. 981, 126 S.Ct. 554, 163 L.Ed.2d 468 (2005). In the absence of internal contradiction or irreconcilable conflicts with physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient to support a conviction. State v. Dixon, 07–915 (La. App. 5 Cir. 3/11/08), 982 So.2d 146, 153, writ denied, 08–0987 (La. 1/30/09), 999 So.2d 745.

Defendant was convicted of second degree murder in violation of La. R.S. 14:30.1. Second degree murder is defined, in pertinent part, as the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm.4 La. R.S. 14:30.1(A)(1). Specific intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. State v. Seals, 09–1089 (La. App. 5 Cir. 12/29/11), 83 So.3d 285, 306, writ denied, 12–0293 (La.10/26/12), 99 So.3d 53, cert. denied, ––– U.S. ––––, 133 S.Ct. 2796, 186 L.Ed.2d 863 (2013). The determination of specific intent is a question of fact. Id. at 306. Specific intent may be inferred from the circumstances and from the defendant's actions, and the intent to kill or to inflict great bodily harm may be inferred from the extent and severity of the victim's injuries. Id. Further, a specific intent to kill may be inferred from the intentional use of a deadly weapon such as a knife or gun. State v. Cochran, 09–85 (La. App. 5 Cir. 6/23/09), 19 So.3d 497, 508, writ denied, 09–1742 (La.3/26/10), 29 So.3d 1249; see also State v. Gonzalez, 07–449 (La. App. 5 Cir. 12/27/07), 975 So.2d 3, 8, writ denied, 08–0228 (La.9/19/08), 992 So.2d 949.

In addition to proving each statutory element of the crime charged, the State must also prove the identity of the perpetrator. State v. Williams, 08–272 (La. App. 5 Cir. 12/16/08), 3 So.3d 526, 529, writ denied, 09–0143 (La.10/16/09), 19 So.3d 470. Thus, in order to carry its burden of proof, the State is required to negate any reasonable probability of misidentification. Id. Positive identification by only one witness is sufficient to support a conviction. Id. This Court has also upheld convictions based on identifications later recanted. See State ex rel. D.W., 09–855 (La. App. 5 Cir. 9/14/10), 47 So.3d 1048, 1057.

The guilty verdict was based upon eyewitness testimony. Mr. Mitchell identified defendant as the person who pointed a gun at his head and stated "You're not the one" shortly before he heard several gunshots followed by the victim's death. Ms. Berry testified that she observed three people, including defendant, surround the victim on the ground and discharge approximately five gunshots at him. Approximately one week after the murder, Ms. Wilford identified defendant as the gunman who shot the victim seven times, but soon thereafter changed her story and told the police that defendant was not the gunman. Ms. Wilford offered inconsistent testimony at trial, initially testifying that she made eye contact with

defendant as he discharged his weapon at the victim and then testifying that defendant did not shoot the victim.

Defendant presented his version of events through his own testimony and that of Tiffany Walker, Michelle Joseph, Dominique Gourgis, Nelson Duplessis, and Dionne Gillard, who all testified that defendant did not shoot the victim and was not involved in the altercation that night.

Confronted with and in weighing the conflicting and inconsistent testimony, the jury obviously found the State's witnesses more credible than those for defendant, and found Ms. Wilford's accusatory statements more credible than her recantations. The testimony that defendant discharged a firearm several times at the victim, when viewed in the light most favorable to the prosecution, supports the conclusion that any rational trier of fact would have found beyond a reasonable doubt that defendant acted with a specific intent to kill or to inflict great bodily harm.

Accordingly, the trial court did not err in denying defendant's motion for post-verdict judgment of acquittal on the basis of insufficient evidence. Additionally, the trial court did not abuse its discretion in denying defendant's motion for new trial on this basis. See State v. Richoux, 11–1112 (La. App. 5 Cir. 9/11/12), 101 So.3d 483, 490, writ denied, 12–2215 (La. 4/1/13), 110 So.3d 139. These assignments of error are without merit.[31]

The Louisiana Supreme Court then likewise denied relief without assigning additional reasons.[32]

Because a sufficiency of the evidence claim presents a mixed question of law and fact, this Court must defer to the state court's decision rejecting this claim unless petitioner shows that the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Taylor v. Day, Civ. Action No. 98-3190, 1999 WL 195515, at *3 (E.D. La. Apr. 6, 1999), aff'd, 213 F.3d 639 (5th Cir. 2000). For the following reasons, petitioner has not made such a showing.

As the Louisiana Fifth Circuit Court of Appeal correctly noted, claims of insufficient evidence are to be analyzed pursuant to the standard set forth in Jackson v. Virginia, 443 U.S. 307 (1979). In Jackson, the United States Supreme Court held that, in assessing such a claim, "the

---

[31] Williams, 164 So. 3d at 908-910; State Rec., Vol. 5 of 13.
[32] State v. Williams, 178 So. 3d 999 (La. 2016); State Rec., Vol. 13 of 13.

relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319. Accordingly, "[t]he Jackson inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit.' " Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001) (quoting Herrera v. Collins, 506 U.S. 390, 402 (1993)) (emphasis added). Therefore, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court.... Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." Cavazos v. Smith, 132 S.Ct. 2, 4 (2011). Moreover, as the United States Fifth Circuit Court of Appeals has observed: "[A] state prisoner's burden is especially heavy on habeas review of the sufficiency of the evidence. The jury's finding of facts will be overturned only when necessary to preserve the fundamental protection of due process of law." Perez v. Cain, 529 F.3d 588, 594 (5th Cir. 2008) (quotation marks omitted). Further, because the state court's decision applying the already deferential Jackson standard must be assessed here under the strict and narrow standards of review mandated by the AEDPA, the standard to be applied by this Court is in fact "twice-deferential." Parker v. Matthews, 132 S. Ct. 2148, 2152 (2012); see also Coleman v. Johnson, 132 S. Ct. 2060, 2062 (2012).

Additionally, it must be remembered that Louisiana's circumstantial evidence standard requiring that every reasonable hypothesis of innocence be excluded does not apply in federal habeas corpus proceedings; in these proceedings, only the Jackson standard need be satisfied, even if state law would impose a more demanding standard of proof. Foy v. Donnelly, 959 F.2d 1307,

1314 n.9 (5th Cir. 1992); <u>Higgins v. Cain</u>, Civ. Action No. 09-2632, 2010 WL 890998, at *21 n.38 (E.D. La. Mar. 8, 2010), <u>aff'd</u>, 434 F. App'x 405 (5th Cir. 2011); <u>Williams v. Cain</u>, No. 07-4148, 2009 WL 224695, at *4 (E.D. La. Jan. 29, 2009), <u>aff'd</u>, 408 F. App'x 817 (5th Cir. 2011); <u>Davis v. Cain</u>, Civ. Action No. 07-6389, 2008 WL 5191912, at *14 (E.D. La. Dec. 11, 2008); <u>Wade v. Cain</u>, Civil Action No. 05-0876, 2008 WL 2679519, at *6 (W.D. La. May 15, 2008) (Hornsby, M.J.) (adopted by Stagg, J., on July 3, 2008), <u>aff'd</u>, 372 F. App'x 549 (5th Cir. Apr. 9, 2010); <u>see also</u> <u>Coleman</u>, 132 S. Ct. at 2064 ("Under <u>Jackson</u>, federal courts must look to state law for the substantive elements of the criminal offense, but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." (citation and internal quotation marks omitted)).

Petitioner was charged with and convicted of second degree murder. Second-degree murder is defined in relevant part by Louisiana law as "the killing of a human being ... [w]hen the offender has a specific intent to kill or to inflict great bodily harm." La. Rev. Stat. § 14:30.1(A)(1). The phrase "specific intent" is defined as the state of mind in which the perpetrator "actively desired the prescribed criminal consequences to follow his act or failure to act." La. Rev. Stat. § 14:10(1). Under Louisiana law, intent need not be proven directly, but may be inferred from the actions of the defendant and the circumstances surrounding those actions. <u>State v. Sharlhorne</u>, 554 So.2d 1317, 1321 (La. App. 1st Cir. 1989); <u>State v. Tate</u>, 851 So.2d 921, 930 (La. 2003) (citing <u>State v. Brooks</u>, 505 So.2d 714, 717 (La. 1987)). Specific intent to kill can also be implied by the intentional use of a deadly weapon, such as a knife or gun. <u>State v. Collins</u>, 43 So.3d 244, 251 (La. App. 1st Cir. 2010) (citing <u>State v. Brunet</u>, 674 So.2d 344, 349 (1996)).

Petitioner does not specifically contest the sufficiency of the proof related to the essential statutory elements of the offenses for which he was convicted, but rather, contends that the state

failed to prove beyond a reasonable doubt his identity as the perpetrator. He contends that neither the DNA nor video evidence implicated him. He further contends that the witness testimony was so contradictory that no reasonable juror could have found him guilty.

Under Louisiana law, the state is required to prove the identity of the perpetrator in addition to the elements of the crime. State v. Draughn, 950 So.2d 583, 593 (La. 2007), cert. denied, 552 U.S. 1012, 128 S.Ct. 537, 169 L.Ed.2d 377 (2007); State v. Thomas, 192 So.3d 291, 303 (La. App. 5th Cir. 2016); State v. Ingram, 888 So.2d 923, 926 (La. App. 5th Cir. 2004). Where the key issue is identification, the state is required to negate any reasonable probability of misidentification. State v. Vasquez, 729 So.2d 65, 69 (La. App. 5th Cir. 1999). Under both federal and Louisiana law, the testimony of a single eyewitness is generally sufficient to support a conviction. See United States v. King, 703 F.2d 119, 125 (5th Cir. 1983); State v. Neal, 796 So.2d 649, 658 (La. 2001); State v. Williams, 3 So.3d 526, 529 (La. App. 5th Cir. 2008); see also Phillips v. Cain, Civ. Action No. 11-2725, 2012 WL 2564926, at *13 (E.D. La. Apr. 11, 2012), report & recommendation adopted, 2012 WL 2565025 (E.D. La. July 2, 2012). Discrepancies in witness testimony go to credibility, which is a matter left to the judgment of the trier of fact, and an appellate court cannot reassess a credibility determination. State v. Thomas, 13 So.3d 603, 607 (La. App. 5th Cir. 2008).

The relevant evidence presented at trial was more than sufficient to establish, and petitioner does not contest, that Carl Grant died after being shot multiple times. To prove petitioner's identity as the perpetrator of the crimes, the state introduced evidence from multiple witnesses.

Sergeant Lear testified that he showed Nedra Berry two photographic line ups with six pictures each and that she identified petitioner as the person she saw shoot the victim.[33] Lear met

---

[33] State Rec., Vol. 3 of 13, trial transcript of February 25, 2013, pp. 109-112.

with Aisha Wilford and showed her photographs of petitioner and his brother.[34]  Lear did not show Wilford a photographic line up because Wilford advised that she was a lifelong friend and associate of petitioner and his family and that she lived across the breezeway in the apartment complex from petitioner and his mother.[35]  According to Lear, Wilford told him that she was near the front door when the shooting occurred near the right of the front door and she witnessed petitioner shoot the victim.[36]  Wilford identified the shooter by his name, Adrian Williams, and his nickname, "AI."[37]

Detective James Compton testified that he spoke to twenty-two witnesses the night of the shooting after which he secured arrest warrants for petitioner and Jason Elliott.[38]  Compton eventually spoke with Grayland Mitchell and showed him a six-picture photographic line up from which Mitchell identified petitioner.[39]  Compton admitted that the murder weapon was found one year later at the apartment of Jake Tassin and in the possession of Corey Faciane.[40]

Grayland Mitchell testified that, after a scuffle broke out at the Cozy Kit, a young man came up and pointed a gun at his head and said, "you're not the one."[41]  Seconds later, he heard gunshots, but he did not speak to the police that night as he was too shook up and had an asthma attack and the following day his son was born.[42]  He spoke to the police at the victim's funeral and then again weeks later.[43]  Mitchell was shown a line up and identified petitioner as the person who pointed a gun at his head.[44]  He made an in-court identification of petitioner.[45]

---

[34] Id., at p. 119.
[35] Id., at pp. 112-114, 117-119.
[36] Id., at pp. 117-118.
[37] Id., at p. 120.
[38] Id., at pp. 112-123.
[39] Id., at pp. 130-131.
[40] Id., at pp. 132-134.
[41] Id., at 167, 174.
[42] Id., at pp. 167-170.
[43] Id., at p. 168.
[44] Id., at p. 168-169, 171.
[45] Id., at p. 169.

Nedra Berry testified that she was across the street from the Cozy Kit when a fight broke out and she saw Mitchell and the victim exit the building as the fight continued outside.[46]  The fight stopped when petitioner, who Berry identified in court, pulled out a gun and fired into the air twice.[47]  Berry crossed the street and was next to the door of the club when she witnessed petitioner and two others shooting their guns at the victim, who was on the ground.[48]  She spoke with the police and identified petitioner as the person who fired shots in the air and was present at the time of the murder.[49]  She testified that neither Cory Faciane or Jake Tassin, who were found to be in possession of the murder weapon one year later, were at the club that night.[50]

Aisha Wilford testified that the fight broke out at the Cozy Kit and, after it moved outside, she heard two gunshots.[51]  She admitted that petitioner was involved in the fight.[52]  Wilford testified that she witnessed petitioner shoot the victim six or seven times.[53]  She admitted that she later spoke with police detectives and, when shown a photograph of petitioner, she wrote, "This is the young man I saw shooting Carl Grant seven times."[54]  When shown a picture of Mark Williams, she wrote, "This is the person that was fighting with Carl Grant on 12/04/2010."[55]  Wilford admitted she had known the brothers for a long time could tell the difference between them.[56]  She explained that, after she met with police, she called the police and said she had a dream that Mark Williams was the shooter and not petitioner.[57]  Wilford then recanted her earlier testimony and

---

[46] State Rec., Vol. 4 of 13, trial transcript of February 26, 2013, pp. 27-29.
[47] Id., at pp. 29-30, 32, 35, 36-37, 43.
[48] Id., at pp. 29-32, 39, 41.
[49] Id., at pp. 32-33.
[50] Id., at pp. 33-34.
[51] Id., at pp. 62-63, 66-67.
[52] Id., at p. 68.
[53] Id., at p. 68-71.
[54] Id., at pp. 74-76
[55] Id., at pp. 75-76.
[56] Id., at p. 76.
[57] Id., at pp. 76-77.

testified that petitioner did not shoot Grant.[58]  Wilford admitted that she had previously given a statement to police that she witnessed petitioner shoot the victim and made eye contact with petitioner when he was shooting.[59]

Detective Alvarez testified that he met with Wilford at which time she gave a statement and identified petitioner as the perpetrator she saw shoot the victim seven times.[60]  Alvarez confirmed that Wilford identified petitioner's brother, Mark Williams, as the person who was fighting with the victim.[61]  A few days later, Wilford told Alvarez that she had a dream that it was not the petitioner, but his brother Mark who shot the victim.[62]  According to Alvarez, he and Detective Lear met with Wilford a second time, and she gave a taped statement that petitioner was the shooter.[63]

In support of his defense of mistaken identity, the defense presented the testimony of several witnesses.  Tiffany Walker, petitioner's girlfriend at the time of the murder, testified that she was with petitioner at the Cozy Kit when she heard a gunshot.[64]  She fled outside, located petitioner, and they immediately left.[65]  According to Walker, petitioner received a phone call from someone at the bar and learned the victim had been shot.[66]

Michelle Joseph, also known as Teedy Shell, testified that petitioner was not involved in the altercation at the Cozy Kit and had left before it even occurred.[67]  After Joseph left, she heard shots fired in the air, but she did not see who fired the gun.[68]

---

[58] Id., at pp. 77, 82, 102.
[59] Id., at pp. 79-81.
[60] Id., at pp. 139-140, 143, 149.
[61] Id., at p. 141.
[62] Id., at 142-144.
[63] Id., at p. 144.
[64] Id., at pp. 162, 168, 170-171.
[65] Id., at pp. 168-170.
[66] Id., at p. 170.
[67] Id., at pp. 176, 178.
[68] Id., at p. 177.

Dionne Gillard, petitioner's cousin, testified that she was the manager of the Cozy Kit and provided a videotape from the bar to the police.[69]  Gillard testified that she had reviewed the videotape, but that petitioner was not a part of the altercation.[70]

Petitioner testified he was not involved in the altercation, but rather was attempting to locate Walker during the fight.[71]  Petitioner testified that he had viewed the videotape and that his brothers Mark and James were involved in the fight.[72]  Petitioner claimed he went outside, located Walker, and then heard two shots fired.[73]  They drove away and he did not hear any other gunshots.[74]  He learned about the murder when he received a phone call the next day and then his brother James sent him a text that there was a warrant out for his arrest.[75]  Petitioner turned himself in after three or four days.[76]

Dominique Gourgis, a long-time friend of petitioner, testified that she saw the victim being attacked by a lot of people.[77]  The fight moved outside, as did Gourgis, and the victim was shot.[78]  Gourgis testified that she that witnessed the shooting, but petitioner was not the shooter and did not have a gun.[79]  Gourgis claimed that Mark and Cornell Williams were the shooters.[80]  She testified that petitioner was outside across the street at the time of the shooting.[81]

Nelson Duplessis, another long-time friend of petitioner, testified that petitioner was not involved in the altercation, rather it was petitioner's brother.[82]  The fight moved outside and

---

[69] Id., at pp. 182-183.
[70] Id.
[71] Id., at pp. 186-187, 189.
[72] Id., at p. 188.
[73] Id., at pp. 189-190.
[74] Id., at p. 190.
[75] Id., at pp. 191, 194.
[76] Id., at pp. 191, 194, 203.
[77] State Rec., Vol. 5 of 13, trial transcript of February 27, 2013, pp. 8-10.
[78] Id., at p. 9.
[79] Id., at pp. 10-11.
[80] Id., at pp. 11-12.
[81] Id., at pp. 14, 25-26.
[82] Id., at pp. 38, 40.

Duplessis saw petitioner's brother fire two shots.[83]    According to Duplessis, he did not see petitioner at the scene at the time of the gunshots.[84]  More fighting occurred and another round of shots went off.[85]  Duplessis testified that there were two shooters, who he claimed to be Mark and Cornell Williams.[86]  Duplessis was arrested the following day and placed in a holding cell with Jason Elliott, but claimed that they did not discuss the murder.[87]  On that date, Duplessis told police that neither petitioner nor Elliott were involved in the murder, rather Mark and Cornell Williams were the shooters.[88]  Duplessis admitted that he pled guilty to a charge of accessory after the fact to second degree murder.[89]

On rebuttal, Detective Vinson testified that, after the murder, he was monitoring a television monitor that displays the holding cell.[90]  He heard Duplessis tell a second subject "don't worry, I gave the wrong name."[91]

Sergeant Lear testified that he met with Wilford twice.[92]  According to Lear, Wilford gave a taped statement and identified the persons in photographs at the first meeting.[93]  The following day, Wilford contacted him and said she had a dream that petitioner was not the shooter and that her spirit told her Mark Williams was the shooter.[94]  Lear met with Wilford in person a second time and gave her an opportunity to recant her original statement, but she maintained that petitioner was the shooter, indicating that she was nervous and scared.[95]

---

[83] Id., at pp. 41, 48.
[84] Id., at p. 42.
[85] Id., at pp. 42-43.
[86] Id., at pp. 42-44, 50.
[87] Id., at p. 45.
[88] Id., at pp. 45-46.
[89] Id., at pp. 37, 51.
[90] Id., at pp. 84-85.
[91] Id., at pp. 85-86.
[92] Id., at pp. 89-90.
[93] Id., at p. 90.
[94] Id.
[95] Id., at pp. 90-91.

To the extent that petitioner is arguing that the jurors should not have found the state's witnesses credible, and should have believed the his testimony as well as that of the other defense witnesses, that simply is not for this Court to say.  Credibility determinations are the province of the jurors, and a federal habeas court generally will not grant relief on a sufficiency claim grounded on such matters of credibility.  See Schlup v. Delo, 513 U.S. 298, 330, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995) ( "[U]nder Jackson [v. Virginia] 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) ], the assessment of the credibility of witnesses is generally beyond the scope of review."); Ramirez v. Dretke, 398 F.3d 691, 695 (5th Cir.2005) ("All credibility choices and conflicting inferences are to be resolved in favor of the verdict."); McCowin v. Scott, No. 93–5340, 1994 WL 242581, at *2 (5th Cir. May 26, 1994) (A "challenge of the jury's credibility choice fails to satisfy the Jackson standard for habeas relief."); Phillips v. Cain, Civ. Action No. 11–2725, 2012 WL 2564926, at *14 (E.D. La. April 11, 2012), adopted, 2012 WL 2565025 (E.D. La. July 2, 2012); Picou v. Cain, Civ. Action No. 06–6258, 2007 WL 1521021, at *5 (E.D. La. May 22, 2007).

In summary, for the reasons explained by the Louisiana Fifth Circuit Court of Appeal, when the evidence in this case is viewed *in the light most favorable to the prosecution*, it simply cannot be said that the guilty verdict was *irrational*.  Therefore, petitioner cannot show that the state court's decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, under these doubly-deferential standards of review which must be applied by this federal habeas court, relief is not warranted.

## B.  Motion to Suppress Identification

Petitioner next claims that the state district court erred in denying his motion to suppress the identification of him by Wilford.  He argues that because Wilford was shown a single picture, it was an impermissibly suggestive identification procedure.

Petitioner filed several motions to suppress the identifications of him.[96]  The trial court held hearings on January 25, 2012 and February 24, 2012.[97]  At the conclusion of the hearings, the trial court denied the motions to suppress.[98]

On direct appeal, petitioner argued that the trial court erred in denying the motions to suppress as they related to the identification by Aisha Wilford.[99]  The Louisiana Fifth Circuit rejected the claim, setting out the applicable federal law and corresponding state law:

> In counseled assignment of error four and defendant's second pro se assignment of error, defendant argues that the trial court erred in failing to suppress Aisha Wilford's identification of him as the perpetrator because the single photograph identification procedure employed was inherently suggestive.
>
> On June 9, 2011, defendant filed a motion to suppress identification and moved to suppress "all identifications."  Defendant argued that the motion should be granted because he was viewed under circumstances which impermissibly suggested that he was the perpetrator; the identification procedure was conducted without his counsel in violation of his Sixth Amendment rights; and the identification procedure was so suggestive that it tainted his rights.
>
> At the motion hearing, Sergeant Lear testified that Aisha Wilford, who had indicated that she knew defendant and his family, was presented with a single photograph of defendant "to make certain that [she and the police] were talking about the same individual."  The trial court denied the motion to suppress.
>
> A trial court's decision to deny a motion to suppress is afforded great weight and will not be set aside unless the preponderance of the evidence clearly favors suppression.  State v. Sam, 11–469 (La. App. 5 Cir. 2/14/12), 88 So.3d 580, 586, writ denied, 12–0631 (La. 9/12/12), 98 So.3d 301.  A trial court is afforded great discretion when ruling on a motion to suppress, and its ruling will not be disturbed

---

[96] State Rec. Vol. 7 of 13, Motion to Suppress Evidence of Identification dated February 1, 2011; Motion to Suppress Confession, Identification, and Physical Evidence dated June 9, 2011.

[97] State Rec. Vol. 7 of 13, minute entry dated January 25, 2012; minute entry dated February 24, 2012; State Rec., Vol. 2 of 13, transcript of January 25, 2012; transcript of February 24, 2012.

[98] State Rec. Vol. 7 of 13, minute entry dated February 24, 2012; State Rec. Vol. 2 of 13 transcript of February 24, 2012.

[99] State Rec., Vol. 5 of 13, appellate brief, 13-KA-818, filed December 9, 2013; pro se brief, 2013-KA-0818, dated March 17, 2014.

absent an abuse of that discretion.  Id. In determining whether the trial court's ruling on a motion to suppress is correct, an appellate court is not limited to the evidence presented at the motion to suppress hearing but also may consider pertinent evidence presented at trial.  Id.

Generally, a defendant has the burden of proof on a motion to suppress an out-of-court identification.  State v. Bradley, 11–1060 (La. App. 5 Cir. 9/25/12), 99 So.3d 1099, 1105, writ denied, 12–2441 (La.5/3/13), 113 So.3d 208.  This requires the defendant to first prove that the identification procedure was suggestive.  Id. An identification procedure is considered suggestive if the attention of the witness is unduly focused on the defendant during the procedure.  Id.  If the defendant succeeds in establishing that the identification procedure was suggestive, the defendant must then show there was a substantial likelihood of misidentification as a result of the identification procedure.  Id. at 1106.  It is the likelihood of misidentification that violates due process, not the mere existence of suggestiveness.  Id.

Single photograph identifications are generally viewed by the courts with suspicion.  State v. Jones, 09–688 (La. App. 5 Cir. 2/9/10), 33 So.3d 306, 318. However, their suggestive nature will not per se preclude admissibility unless there was a substantial likelihood of misidentification under the totality of the circumstances.  Id.

In Manson v. Brathwaite, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977), the United States Supreme Court, considering a single photograph identification procedure, held that "reliability is the linchpin in determining the admissibility of identification testimony."  The Court enumerated several factors to be considered in determining whether an identification is reliable: (1) the witness' opportunity to view the criminal at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of the prior description of the criminal, (4) the level of certainty demonstrated at the confrontation, and (5) the time between the crime and the confrontation.  Id. at 114–115, 97 S.Ct. 2243.

In State v. Crossley, 48,149 (La. App. 2 Cir. 6/26/13), 117 So.3d 585, 595, writ denied, 13–1798 (La.2/14/14), 132 So.3d 410, the defendant, who had been convicted of two counts of second degree murder, argued on appeal that the trial court erred in denying his motion to suppress a single photograph identification. The identification had been made by an eyewitness who was "familiar" with the defendant and first identified him as the perpetrator by name before being shown a single photograph by the police "to confirm" that they were talking about the same person.  Id. at 596.  Applying the factors to determine whether the identification was reliable, the Second Circuit Court of Appeal found the trial court had not erred in denying the motion to suppress the identification.  Id. at 597–98.  The court found that the eyewitness knew the defendant and made the photographic identification after she had identified the defendant by name as the perpetrator.  Id.  Thus, the purpose of the photographic identification was "to ensure that the defendant was actually the person [the eyewitness] identified as the assailant."  Id.

Assuming arguendo that the single photograph identification was suggestive, applying the Manson factors, we find there was not a substantial likelihood of misidentification for the following reasons.

25

First, despite Ms. Wilford's recantation, she initially testified that she was "not far" from defendant when she made eye contact with him as he discharged his weapon at the victim.

Second, even though she testified that she made eye contact with the gunman, Ms. Wilford testified that she did not get a good look at the gunman and that she had been drinking "a lot" that night. Yet, notwithstanding this claim of intoxication, her testimony at trial demonstrated an ability to recall numerous details of that night.

Third, Ms. Wilford did not give a physical description of the perpetrator to the police. She identified defendant by name as the perpetrator. At the suppression hearing, Sergeant Lear testified that Ms. Wilford told him that she lived near defendant's family and was "very familiar" with defendant, his brother, and his mother. At trial, Ms. Wilford testified that she has known defendant and his brother Mark "for a long time" and that she can easily distinguish the two.

Fourth, Detective Louis Alvarez testified that Ms. Wilford neither hesitated in her identification of defendant as the perpetrator nor in her identification of Mark Williams as a participant in the fight. Indeed, the inscriptions Ms. Wilford affixed to defendant's photograph and Mark Williams' photograph do not suggest she was uncertain in these identifications. On defendant's photograph, she wrote: "This is the young man I saw shooting Carl Grant 7 times." On the photograph of Mark Williams, she wrote: "This is the person that was fighting Carl Grant on 12–04–2010. He is also (A.I.'s) brother."

Lastly, although Ms. Wilford identified defendant in the photograph eight days after the victim's murder, this delay is not significant since Ms. Wilford is "very familiar" with and has known defendant and his family "for a long time." Moreover, at the time of Ms. Wilford's identification, arrest warrants for defendant and Mr. Elliot had previously been issued. It was one week after the issuance of the warrants that Ms. Wilford, on her own accord, contacted the police and informed them that she had witnessed defendant perpetrate the shooting. Thus, her single photograph identification merely confirmed information already provided to the police. Sergeant Lear testified that Ms. Wilford was presented a single photograph not for purposes of identifying the perpetrator, but to confirm that she and the detectives were talking about the same person.

Accordingly, we find no abuse of discretion in the trial court's denial of defendant's motion to suppress. These assignments of error are without merit.[100]

Without assigning additional reasons, the Louisiana Supreme Court then likewise denied relief.[101]

The state appellate court here found that even if arguably considered unduly suggestive, the identification was nevertheless reliable under the totality of the circumstances. Because the

---

[100] <u>Williams</u>, 164 So. 3d at 910-912; State Rec., Vol. 5 of 13.
[101] <u>Williams</u>, 178 So. 3d at 999.

state court denied the claim on the merits, and because the claim presents a mixed question of law and fact, this Court must defer to the state court's decision rejecting the claim unless petitioner shows that the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Coleman v. Quarterman, 456 F.3d 537, 544 (5th Cir. 2006); Walker v. Vannoy, Civ. Action No. 15-6809, 2016 WL 7485675, at *11 (E.D. La. Sept. 9, 2016), adopted, 2016 WL 7476334 (E.D. La. Dec. 29, 2016).

The United States Supreme Court has stated that "reliability is the linchpin in determining the admissibility of identification testimony" under the Due Process Clause. Manson v. Brathwaite, 432 U.S. 98, 114 (1977); see also United States v. Moody, 564 F.3d 754, 762 (5th Cir. 2009). A two-step analysis is employed asking first, whether the identification procedure was impermissibly suggestive and second, whether under the totality of the circumstances, the suggestiveness leads to a substantial likelihood of irreparable misidentification. Coleman, 456 F.3d at 544 (quotations omitted). In this case, the state appellate court reasonably applied the factors articulated in Brathwaite and properly determined that the identification procedure used in Williams's case, even if considered suggestive because Wilford was shown a single photograph, did not lead to a substantial likelihood of misidentification and was therefore reliable under the totality of the circumstances.

As the state court correctly noted, five factors apply in assessing the reliability of an identification: (1) the witness' opportunity to view the perpetrator at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' description of the perpetrator; (4) the witness' level of certainty concerning the identification; and (5) the time between the crime and the confrontation. Brathwaite, 432 U.S. at 114-15. In its opinion, the Louisiana Fifth Circuit Court

of Appeal addressed Williams's arguments with regard to those factors and concluded that the identification was reliable. Williams argues that he and his brother Mark Williams look alike, Wilford was under the influence of alcohol at the time of the murder, and no other witness was shown a single photograph of Mark Williams.

However, Wilford herself contacted the police through her school resource officer and said that she was at the scene of the murder and that she was a lifelong friend of Adrian Williams.[102] After Wilford told police petitioner was the shooter and his brother, Mark Williams, was involved in a fight at the scene, police then showed her photographs of petitioner and Mark Williams to confirm they were speaking of the same individuals.[103] When shown the photographs, Wilford identified petitioner as the person she saw shoot the victim and Mark Williams as being a person involved in a fight with the victim.[104] She explained that she lived across the breezeway from the family and was very familiar with petitioner, his brother Mark Williams, their mother, and the rest of the family.[105] While Wilford later told police she had a dream that Mark Williams was the shooter, she also told them that she was scared and fearful of retaliation.[106] She was given an opportunity to recant her first statement, but maintained that petitioner was the shooter.[107]

While she had been drinking the night of the murder, Wilford was able to recall many details of the evening including what she was wearing, how long she had been at the bar before the fight broke out, and her location in the bar when the fight initially began.[108] She recalled where she was standing when the victim was shot and making eye contact with petitioner as he shot the

---

[102] State Rec., Vol. 2 of 13, transcript of February 24, 2012, p. 38
[103] State Rec., Vol. 2 of 13,  transcript of January 25, 2012, pp. 14, 19; transcript of February 24, 2012, at pp. 29, 31, 38-42; 46;
[104] State Vol. 2 of 13, transcript of January 25, 2012, pp. 15, 25; transcript of February 24, 2012, at pp. 38-43.
[105] Vol. 2 of 13, transcript of January 25, 2012, pp. 19, 21.
[106] State Rec., Vol. 2 of 13, transcript of February 24, 2012, pp. 9-12, 25, 27-28, 32-34, 44.
[107] Id., at pp. 29, 32-33.
[108] State Rec., Vol. 4 of 13, trial transcript of February 26, 2013, p. 63.

28

victim.[109]  She further admitted that she had no difficulty standing or walking and remembered leaving the scene and running to her great aunt's home when the police arrived.[110]

A witness's prior acquaintance with the accused renders negligible the risk of misidentification.  See United States v. Hefferon, 314 F.3d 211, 219 (5th Cir. 2002); Hetzel v. Cowan, 518 F.2d 851 (6th Cir.1975); United States v. Beckham, 505 F.2d 1316, 1319 (5th Cir.1975); Weber v. Cain, Civ. Action No. 06–1055, 2008 WL 3876399, at *21 (E.D. La. Aug. 20, 2008).  Where, as here, an identification is based on prior acquaintance, the issue is less one of *reliability* than of *credibility*, and doubts as to credibility are properly left to the jury.  United States v. Lewis, 248 F.3d 1142, at *3 (5th Cir. 2001) (per curiam) (citing United States v. Fernandez– Roque, 703 F.2d 808, 814 (5th Cir.1983)).

Upon review, the state court's determination was not objectively unreasonable. Accordingly, in light of the deferential standards mandated by the AEDPA, Williams's claim concerning Wilford's identification should be denied.

### C.  Prosecutorial Misconduct/Sleeping Juror

In his next two claims, petitioner alleges that the prosecution made improper and prejudicial remarks during closing argument and rebuttal and that the verdict in his case was "suspect" due to the fact that a juror was observed sleeping during the trial.

Petitioner first raised these arguments in his application for post-conviction relief.  The state district court found petitioner's prosecutorial misconduct claim procedurally barred pursuant to La. Code Crim. P. art. 930.4(B).[111]  The court alternatively held that petitioner failed to point to any specific instances or comments resulting in prosecutorial misconduct and his claim was

---

[109] Id., at pp. 67-71, 74
[110] Id., at p. 71, 83, 100.
[111] State Rec., Vol. 9 of 13, Order dated March 9, 2017.

unsubstantiated, vague and conclusory.[112]  The Louisiana Fifth Circuit found that petitioner failed to show the state district court erred in denying his claim on the procedural ground or on the merits.[113]

The state district court found petitioner's claim relating to a sleeping juror was procedurally barred pursuant to La. Code Crim P. art .930.4(C) because he inexcusably failed to pursue the issue on appeal.[114]  The Louisiana Fifth Circuit Court of Appeal the district court did not err in its ruling.[115]  The Louisiana Supreme Court found that both claims were non-cognizable or repetitive, citing La. Code Crim P. arts. 930.3 and 930.4.[116]

In light of the foregoing rulings, the state argues that these claims are procedurally barred from federal review.  The state is correct.

The United States Fifth Circuit Court of Appeals has held:

> A claim that a state has withheld a federal right from a person in its custody may not be reviewed by a federal court if the last state court to consider that claim expressly relied on a state ground for denial of relief that is both independent of the merits of the federal claim and an adequate basis for the court's decision.  To satisfy the "independent" and "adequate" requirements, the dismissal must "clearly and expressly" indicate that it rests on state grounds which bar relief, and the bar must be strictly or regularly followed by state courts, and applied to the majority of similar claims.  This rule applies to state court judgments on both substantive and procedural grounds.

Finley v. Johnson, 243 F.3d 215, 218 (5th Cir. 2001) (citations omitted).  Moreover, "[a] state court expressly and unambiguously bases its denial of relief on a state procedural default even if it alternatively reaches the merits of a [petitioner's] claim."  Fisher v. Texas, 169 F.3d 295, 300 (5th Cir. 1999).

---

[112] Id.
[113] Williams v. Vannoy, No. 17-KH-203 (La. App. 5th Cir. May 8, 2017); State Rec. Vol. 9 of 13.
[114] State Rec., Vol. 9 of 13, Order dated March 9, 2017.
[115] Williams v. Vannoy, No. 17-KH-203 (La. App. 5th Cir. May 8, 2017); State Rec. Vol. 9 of 13.
[116] State ex rel. Williams v. State, 251 So. 3d 1066 (La. 2018) (per curiam); State Rec., Vol. 13 of 13.

Clearly, the procedural rules on which the state courts relied were "independent" and "adequate." It is well-established that La. Code Crim. P. art. 930.4(B) and (C) are independent and adequate state court grounds sufficient to procedurally bar claims from federal habeas review.  See, e.g., Robinson v. Cooper, Civ. Action No. 12–1327, 2013 WL 2154011, at *5 (E.D. La. May 2, 2013); Brown v. Cain, Civ. Action No. 11–2267, 2011 WL 7042222, at *8 (E.D. La. Dec.20, 2011), adopted, 2012 WL 123288 (E.D. La. Jan.17, 2012); Thomas v. Cain, Civ. Action No. 11–2408, 2011 WL 6046536, at *5 (E.D. La. Nov.17, 2011), adopted, 2011 WL 6028779 (E.D. La. Dec.5, 2011); Young v. Travis, Civ. Action No. 07–3542, 2011 WL 494811, at *8 (E.D. La. Jan.13, 2011), adopted, 2011 WL 494802 (E.D. La. Feb.4, 2011); Jones v. Cain, Civ. Action No. 10–0187, 2010 WL 3312592, at *5–6 (E.D. La. July 29, 2010), adopted, 2010 WL 3312594 (E.D. La. Aug.19, 2010); Green v. Cooper, Civ. Action No. 06–1657, 2009 WL 87590, at *10 (E.D. La. Jan.8, 2009).  Likewise, federal courts have long held that La. Code Crim. P. art. 930.3 is an independent and adequate state rule.  See, e.g., Hull v. Stalder, No. 99–31199, 2000 WL 1598016 (5th Cir. Sept.28, 2000); Johnson v. Cain, Civ. Action No. 12–0621, 2012 WL 5363327, at *4 (E.D. La. Oct.30, 2012); Taylor v. Cain, Civ. Action No. 07–3929, 2008 WL 4186883, at *16 (E.D. La. Sept.10, 2008); Williams v. Miller, Civ. Action No. 05–0086, 2006 WL 2087867, at *9 (E.D. La. July 24, 2006).

Where, as in the instant case, the state courts have rejected a petitioner's claim based on an independent and adequate state procedural rule, "federal habeas review is barred unless the petitioner demonstrates either cause and prejudice or that a failure to address the claim will result in a fundamental miscarriage of justice."  Hughes v. Johnson, 191 F.3d 607, 614 (5th Cir. 1999). In the instant case, petitioner demonstrates neither.

"To establish cause for a procedural default, there must be something external to the petitioner, something that cannot fairly be attributed to him." Johnson v. Puckett, 176 F.3d 809, 816 (5th Cir. 1999) (quotation marks omitted). Objective factors that can constitute cause include interference by officials that makes compliance with the state procedural rule impracticable, a showing that the factual or legal basis for the claim was not reasonably available to counsel, and ineffective assistance of counsel. Romero v. Collins, 961 F.2d 1181, 1183 (5th Cir. 1992).

Petitioner raises ineffective assistance of appellate counsel as cause for the procedural default of his claim relating to a sleeping juror. Such a claim cannot serve as cause for the default because the claim was not presented to the state courts. Specifically, an ineffective assistance of counsel claim itself must be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default. See Edwards v. Carpenter, 529 U.S. 446, 453 (2000) (holding that "ineffective assistance adequate to establish cause for the procedural default of some other constitutional claim is itself an independent constitutional claim. And we held in [Murray v. Carrier, 477 U.S. at 488-89] that the principles of comity and federalism that underlie our longstanding exhaustion doctrine—then as now codified in the federal habeas statute, see 28 U.S.C. §§ 2254(b), (c)—require *that* constitutional claim, like others, to be first raised in state court") (emphasis in original). "Absent a showing of cause, it is not necessary for the court to consider whether there is actual prejudice." Martin v. Maxey, 98 F.3d 844, 849 (5th Cir. 1996).

Petitioner raises ineffective assistance of trial counsel as cause for his failure to raise his claim of prosecutorial misconduct due to comments made during closing arguments. However, as discussed later in this opinion, counsel was not ineffective in this respect. Where, as here, a petitioner's ineffective assistance of counsel claim is meritless, it cannot serve as cause for a procedural default. Sherill v. Hargett, 184 F.3d 1172, 1176 (10th Cir. 1999); Turner v. Compoy,

No. 91-55842, 1993 WL 425372, at *3 n.2 (9th Cir. Oct. 19, 1993); Bella v. Cain, Civ. Action No. 12-2323, 2015 WL 1311216, at *16 (E.D. La. Mar. 23, 2015); Arita v. Cain, Civ. Action No. 11-636, 2011 WL 4738666, at *11 (E.D. La. Aug. 25, 2011), adopted, 2011 WL 4738658 (E.D. La. Oct. 6, 2011), aff'd, 500 F. App'x 352 (5th Cir. 2012).

Because the purported ineffectiveness of counsel cannot serve as cause for the default of either of petitioner's claims, and because petitioner has established no other cause for default of the claims, the Court need not consider whether actual prejudice would result from the application of the procedural bar. Martin, 98 F.3d at 849.

Because petitioner has not met the "cause and prejudice" test, these claims are barred from federal review unless the application of the procedural bar would result in a "fundamental miscarriage of justice." In order to establish that there would be a "fundamental miscarriage of justice," a petitioner must "make a persuasive showing that he is actually innocent of the charges against him. Essentially, the petitioner must show that, as a factual matter, he did not commit the crime for which he was convicted." Finley, 243 F.3d at 220 (citations omitted). However, the United States Supreme Court has cautioned:

> To be credible, such a claim [of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be *exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence*—that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful.

Schlup v. Delo, 513 U.S. 298, 324 (1995). Here, petitioner presents no new evidence of innocence, much less any new evidence of the type or caliber referenced in Schlup. Moreover, ample evidence of his guilt was introduced at trial. Therefore, he has not established that any miscarriage of justice will result from the application of the procedural bar.

For these reasons, petitioner's claims relating to a sleeping juror and prosecutorial misconduct are procedurally barred and should not be considered by this Court.

### D.  Ineffective Assistance of Counsel

Finally, petitioner alleges he received ineffective assistance of counsel.  He specifically argues that trial counsel was ineffective for failing to (1) investigate the case and interview and subpoena witnesses, (2) object to the prosecution's closing and rebuttal arguments and raise the issue of prosecutorial misconduct in the motion for new trial.  He also alleges that appellate counsel was ineffective for failing to fully present the issue of insufficiency of evidence on appeal.

These clams were denied by the state courts in Williams's post-conviction proceedings.  As to his claim of ineffective assistance of trial counsel for failing to investigate and subpoena witnesses, the state district court held:

> Petitioner claims that trial counsel was ineffective for failure to investigate and subpoena witnesses.  However, petitioner fails to specify what further investigation would render, or how it would have changed the outcome of the trial. The court find this claim speculative and conclusory.  Petitioner fails to provide how counsel was defective, or the prejudice resulting.  On the showing made, petitioner is not entitled to relief.[117]

Regarding his claim of ineffective assistance of counsel for failure to object to the prosecution's closing and rebuttal arguments or raise the matter in a motion for new trial, the state district court held:

> Petitioner further argues that counsel was ineffective for failing to address the prosecutorial misconduct prior to the jury retiring, and for failing to address this issue in a Motion for New Trial.
> It is clear that the petitioner has a Sixth Amendment right to effective legal counsel.  Under the well-known standard set out in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed.2d 674 (1984), and State v. Washington, 491 So.2d 1337 (La. 1986), a conviction must be reverse if the defendant provides (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's inadequate performance

---

[117] State Rec, Vol. 9 of 13, Order dated March 9, 2017.

prejudiced defendant to the extent that the trial was rendered unfair and the verdict suspect.  State v. Legrand, 2002-1462 (La. 12/3/03), 864 So.2d 89.

To be successful in arguing a claim of ineffective assistance of counsel, a post-conviction petitioner must prove deficient performance to the point that counsel is not functioning as counsel within the meaning of the Sixth Amendment. A petitioner must also prove actual prejudice to the point that the results of the trial cannot be trusted.  It is absolutely essential that both prongs of the Strickland test must be established before relief will be granted by a reviewing court.

Furthermore, there is a strong presumption that counsel's performance is within the wide range of effective representation.  Effective counsel, however, does not mean errorless counsel and the reviewing court does not judge counsel's performance with the distorting benefits of hindsight, but rather determines whether counsel was reasonably likely to render effective assistance.  State v. Soler, 93-1042 (La. App. 5 Cir. 4/26/94), 636 So.2d 1069, 1075.

As petitioner fails to articulate any specific misconduct (as previously discussed) petitioner fails to meet the standards set forth in Strickland.  Petitioner does not prove any deficiency in counsel's performance, or any prejudice resulting.[118]

Finally, as to his claim of ineffective assistance of appellate counsel for failing to fully brief

the issue of insufficiency of the evidence, the state district court found:

As to petitioner's claim of ineffective assistance of appellate counsel in regards to the claim, the court finds no merit.  This claim was thoroughly raised on appeal by counsel and in petitioner's pro se supplemental brief.  The appellate court addressed both in its opinion.

In reviewing claims of ineffective assistance of counsel on direct appeal, the Supreme Court of the United States has expressly observed that appellate counsel "need not advance every argument, regardless of merit, urged by the defendant.  Evitts v. Lucey, 469 U.S. 387, 394 (1985).  The Court gives great deference to professional appellate strategy and applauds counsel for "winnowing out weaker arguments on appeal and focusing on one central issue if possible, and at most a few key issues.  Jones v. Barnes, 463 U.S. 745 (1983).  This is true even where the weaker arguments have merit.  Id. at 751-2.

When the claim of ineffective assistance of appellate counsel is based on failure to raise the issue on appeal, the prejudice prong of the Strickland test requires the petitioner to establish that the appellate court would have granted relief, had the issue been raised.  United States v. Phillips, 210 F.3d 345, 350 (5 Cir. 2000).

As the State surmises, appellate can't be faulted for not advancing non-meritorious arguments.  The court finds petitioner's claim of ineffective assistance of appellate counsel speculative and conclusory.  Petitioner fails to meet this burden.[119]

---

[118] Id.
[119] Id.

The Louisiana Fifth Circuit likewise denied relief.  Regarding the claim of ineffective assistance of trial counsel for failing to investigate and subpoena witnesses, the Fifth Circuit held:

> In his supplemental APCR, relator alleged that his trial counsel was ineffective for failing to investigate and subpoena witnesses.[1]  He asserted that the underlying case hinged on the identification of the shooter.  Relator asserted that he relied on alibi testimony and that testimony concerning the identification of the shooter was essential to the defense.  As such, he believed that there was "no good reason" for trial counsel's failure to "purge and interview" the list of civilian witnesses and the individual found in possession of the murder weapon.
>
> [1] The trial court addressed this claim as "Claim Five" in its March 9, 2017 ruling.
>
> The district court found relator was not entitled to relief stating, "However, petitioner fails to specify what further investigation would render, or how it would have changed the outcome of the trial.  The court finds this claim speculative and conclusory.  Petitioner fails to prove how counsel was defective, or the prejudice resulting."
>
> Upon review, we find, that on the showing made, relator fails to meet his burden of proving that trial counsel was ineffective for failing to investigate and subpoena witnesses.  Specifically, the district court properly stated that relator only provided speculative and conclusory allegations that trial counsel failed to question the civilian witnesses.  Furthermore, in both his supplemental APCR and this writ application, relator does not specifically set forth what other facts and/or information would have been presented to the district court that would have changed the outcome of the trial or undermined the evidence introduced at trial.  Additionally, in Florida v. Nixon, 543 U.S 175, 187, 125 S.Ct. 551, 160 L.Ed.2d 565 (2004), it was held that the defendant has the ultimate right to make certain decisions concerning basic trial rights, but defense counsel should make the strategic and tactical choices and has the authority to manage most aspects of the defense without obtaining the client's approval.  We find no merit to this claim.[120]

Regarding his claim of ineffective assistance of counsel for failing to object to prosecutorial misconduct during closing arguments, the Louisiana Fifth Circuit held:

> Turning to the allegations of ineffective assistance of counsel, the district court found that relator failed to articulate any specific misconduct, and that he failed to meet the standards set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  The district court concluded that relator did not prove any deficiency in counsel's performance, or any prejudice resulting.
>
> Upon review, we find that the district court did not err in finding that relator failed to meet his burden of proving that trial counsel was ineffective.  Under the Sixth Amendment to the United States Constitution and Article I, § 13 of the

---

[120] Williams v. Vannoy, No. 17-KH-203 (La. App 5th Cir. May 8, 2017); State Rec. Vol. 9 of 13.

Louisiana Constitution, a defendant is entitled to effective assistance of counsel. State v. Casimer, 12-678 (La. App. 5 Cir. 3/13/13), 113 So.3d 1129, 1141. To prove ineffective assistance of counsel, a defendant must satisfy the two-prong test set forth in Strickland, supra. Casimer, 113 So.3d a t1141. Under the Strickland test, the defendant must show: (1) that counsel's performance was deficient, that is, that the performance fellow below an objective standard of reasonableness under prevailing professional norms; and (2) that the deficient performance prejudiced the defense. Id. An error is considered prejudicial if it was so serious as to deprive the defendant of a fair trial, or "a trial whose result is reliable." Id. To prove prejudice, the defendant must demonstrate that, but for counsel's unprofessional conduct, the outcome of the trial would have been different. Id.

Upon review, we find that relator failed to meet either prong in Strickland. Thus, we find the district court did not err in its denial of his claim of ineffective assistance of trial counsel.[121]

Regarding his claim of ineffective assistance of appellate counsel, the Fifth Circuit held:

Upon considering relator's claim that his appellate counsel was ineffective, the district court found that petitioner had failed to bear his burden. The district court noted that "the Supreme Court of the United States has expressly observed that appellate counsel 'need not advance every argument, regardless of merit, urged by the defendant.' Evitts v. Lucey ,469 U.S. 387, 394 (1985). … and applauds counsel for 'winnowing out weaker arguments on appeal and focusing on one central issue if possible, and at most a few key issues.' Jones v, Barnes, 463 U.S. 745 (1983)." Further, the district court, relying on United States v. Phillips, 210 F.3d 345, 350 (5th Cir. 2000), determined that the prejudice prong of the Strickland, infra, test, requires the petitioner to establish that the appellate court would have granted relief, had the issue been raised. The district court found that appellate counsel could not be faulted for not advancing non-meritorious arguments.]

Upon review, we find no error in the district court's ruling. As the district court properly found, relator fails to establish that, even if additional arguments concerning sufficiency of the evidence would have been raised on appeal, this Court would have granted relief.[122]

The Louisiana Supreme Court thereafter denied petitioner's related writ application, stating, "Relator fails to show he received ineffective assistance of counsel under the standard of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)."[123]

---

[121] Id.

[122] Id.

[123] State ex rel. Williams v. State, 251 So.3d 1066 (La. 2018) (per curiam); State Rec., Vol. 13 of 13.

Here, the state courts correctly identified the clearly established federal law governing ineffective assistance of counsel claims: Strickland v. Washington, 466 U.S. 668 (1984). As the state court noted, Strickland established a two-part test for evaluating such claims. Specifically, a petitioner seeking relief must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. Id. at 697. A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000). If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong. Strickland, 466 U.S. at 697.

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment. See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. See Strickland, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.' " Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690). A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, see also Williams v. Thaler, 602 F.3d 291, 310 (5th Cir. 2010). Furthermore, "[t]he petitioner must 'affirmatively prove,' and not just allege, prejudice." Day v. Quarterman, 566 F.3d 527, 536 (5th Cir. 2009) (quoting Strickland, 466 U.S. at 693). In this context, "a reasonable probability is a probability sufficient to undermine confidence in the outcome." Cullen v. Pinholster, 563 U.S. 170, 189 (2011) (quoting Strickland, 466 U.S. at. 694). This standard requires a "substantial," not just "conceivable," likelihood of a different result. Harrington, 562 U.S. at 112.

In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." Crockett v. McCotter, 796 F.2d 787, 793 (5th Cir. 1986). Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief. See Miller v. Johnson, 200 F.3d 274, 282 (5th Cir. 2000) (citing Ross v. Estelle, 694 F.2d 1008, 1012 (5th Cir. 1983)).

Because ineffective assistance of counsel claims present mixed questions of law and fact, this Court must defer to the state court decision rejecting such claims unless that decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002). Moreover, the United States Supreme Court has explained that, under the AEDPA, federal habeas corpus review of an ineffective assistance of counsel claim is in fact *doubly* deferential:

> The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense

counsel's performance fell below Strickland's standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.

A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision. Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004). And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Ibid. "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." Knowles v. Mirzayance, 556 U.S. ——, ——, 129 S.Ct. 1411, 1413-14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

Harrington v. Richter, 562 U.S. 86, 101 (2011) (citation omitted). The Supreme Court then explained:

Surmounting Strickland's high bar is never an easy task. An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.

Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. *The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.* The Strickland standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). *When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.*

Id. at 105 (citations omitted; emphasis added).  Therefore, on a habeas review of an ineffective assistance claim, "federal courts are to afford *both* the state court *and* the defense attorney the benefit of the doubt." Woods v. Etherton, 136 S. Ct. 1149, 1151 (2016) (emphasis added; quotation marks omitted).  For the following reasons, the Court finds that, under those stringently deferential standards, it simply cannot be said that relief is warranted with respect to petitioner's ineffective assistance of counsel claims.

### 1.      Failure to Conduct Pretrial Investigation & Interview and Present Witnesses

Petitioner claims that his counsel failed to conduct pretrial investigation, and interview and subpoena witnesses.  He specifically contends that counsel failed to interview and subpoena twenty-two (22) witnesses who were present at the time of the murder as well as Corey Faciane and Jake Tassin, who were found to be in possession of the murder weapon a year later.

To prevail on a claim concerning inadequate investigation and preparation, a petitioner must show that a more thorough investigation or better preparation would have in fact benefited the defense.  In other words, he must show that allegedly exculpatory evidence existed and would have been revealed through additional efforts.  See Moawad v. Anderson, 143 F.3d 942, 948 (5th Cir. 1998); see also Brown v. Dretke, 419 F.3d 365, 375 (5th Cir. 2005); Wilson v. Cain, Civ. Action No. 06-890, 2009 WL 2163124, at *22 (E.D. La. July 16, 2009), aff'd, 641 F.3d 96 (5th Cir. 2011); Davis v. Cain, Civ. Action No. 07-6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008).  A petitioner cannot show prejudice as to a claim that his counsel failed to investigate without adducing what the investigation would have shown and that the outcome would have been different as a result.  Diaz v. Quarterman, 239 F. App'x 886, 890 (5th Cir. 2007) (citing Strickland, 466 U.S. at 696).

Here, petitioner has presented no evidence as to what investigative steps counsel actually took or failed to take. Without such evidence, he cannot show that counsel performed deficiently. Netter v. Cain, Civ. Action No. 15-584, 2016 WL 7157028, at *11 (E.D. La. Oct. 6, 2016), adopted, 2016 WL 7116070 (E.D. La. Dec. 7, 2016). The defense did present a number of witnesses: Tiffany Walker, Michelle Joseph, Dionne Gillard and petitioner himself. The jury also heard pro-defense testimony from Dominique Gourgis and Nelson Duplessis. Counsel's questioning of the witnesses at trial shows that he was prepared and informed. Petitioner also has presented nothing but his self-serving argument to establish that counsel did not contact the prospective witnesses. A petitioner's bare speculation that additional investigation would have resulted in a different outcome at trial is insufficient to prove the prejudice required to prevail on such a claim. See Thomas v. Cain, Civ. Action No. 09-4425, 2009 WL 4799203, at *9 (E.D. La. Dec. 9, 2009).

In any event, even if petitioner had made that showing, he would then additionally have to prove that prejudice in fact resulted from the inadequate investigation. Petitioner has not even specified what further investigation would have revealed, much less explained how that evidence would have been beneficial to the defense. Therefore, his claim necessarily fails. See, e.g., Cox v. Stephens, 602 Fed. App'x 141, 146 (5th Cir. 2015) (holding that "[b]are allegations" that counsel failed "to make an adequate investigation of potential witnesses" were insufficient to warrant relief); United States v. Lewis, 786 F.2d 1278, 1283 (5th Cir. 1986) ("Since Lewis has not pointed out any evidence which would have been produced by more thorough investigation, much less evidence that would be sufficient to undermine confidence in the outcome of the trial, no prejudice has been shown.").

Second, petitioner claims that his counsel was ineffective for failing to subpoena witnesses.

The Fifth Circuit has held:

> Claims that counsel failed to call witnesses are not favored on federal habeas review because the presentation of witnesses is generally a matter of trial strategy and speculation about what witnesses would have said on the stand is too uncertain. For this reason, *we require petitioners making claims of ineffective assistance based on counsel's failure to call a witness to demonstrate prejudice by naming the witness, demonstrating that the witness was available to testify and would have done so, setting out the content of the witness's proposed testimony, and showing that the testimony would have been favorable to a particular defense*. This requirement applies to both uncalled lay and expert witnesses.

Woodfox v. Cain, 609 F.3d 774, 808 (5th Cir. 2010) (emphasis added; citations, quotation marks, and brackets omitted); accord Day v. Quarterman, 566 F.3d 527, 538 (5th Cir. 2009) ("[T]o prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense.").

In this case, petitioner fails to even identify twenty-two of the uncalled witnesses.[124] With regard to Faciane and Tassin, he speculates that they could have testified how they came to possess the weapon and whether petitioner was ever connected to the weapon. Petitioner has presented no evidence, such as affidavits from *any* of the uncalled witnesses, demonstrating that they were available to testify at the trial and would in fact have testified in a manner beneficial to the defense. Therefore, he obviously failed to meet his burden of proof with respect to this claim. See, e.g., Cox v. Stephens, 602 Fed. App'x 141, 146 (5th Cir. 2015) (rejecting claim that counsel was

---

[124] At trial, Detective Compton confirmed that he interviewed Deneta Jones, Angela Patton, Mike Patton, Arian Anderson, Christina McGowen, Nichelle Watts, Sierra Bagneris, Darnelle Johnson, Danzelle Cook, Cory Phillips, Monique Castor, Ashley Samuels, Tangel Johnson, Dominique Burns, Dorese Wings, Tamika Greene, Lana Anderson, Krystal Dunn and Terry Duco at the scene and later made follow-up phone calls. State Rec, Vol. 3 of 13, trial transcript of February 25, 2013, pp. 133-134, 143-144. Compton testified that they all denied seeing anything. Id., at p. 135.

ineffective for failing to call witnesses at trial, noting, "Cox has failed, through affidavits or otherwise, to demonstrate that these witnesses would have testified; identify the content of their testimony; or support that their testimony would have been favorable"); <u>Anthony v. Cain</u>, Civ. Action No. 07-3223, 2009 WL 3564827, at *8 (E.D. La. Oct. 29, 2009) ("This Court may not speculate as to how such witnesses would have testified; rather, a petitioner must come forward with evidence, such as affidavits from the uncalled witnesses, on that issue."); <u>Combs v. United States</u>, Nos. 3:08-CV-0032 and 3:03-CR-0188, 2009 WL 2151844, at *10 (N.D. Tex. July 10, 2009) ("Unless the movant provides the court with affidavits, or similar matter, from the alleged favorable witnesses suggesting what they would have testified to, claims of ineffective assistance of counsel fail for lack of prejudice."); <u>Harris v. Director</u>, TDCJ-CID, No. 6:06cv490, 2009 WL 1421171, at *7 (E.D. Tex. May 20, 2009) ("Failure to produce an affidavit (or similar evidentiary support) from the uncalled witness is fatal to the claim of ineffective assistance.")

For the foregoing reasons, petitioner fails to show that his counsel acted in a constitutionally deficient manner by failing to investigate the case or by failing to call these witnesses at trial and further fails to show that the testimony would have altered the outcome of the trial. The state courts' denial of relief on this issue was not contrary to, or an unreasonable application of <u>Strickland</u>. Petitioner is not entitled to relief on this claim.

### 2. Failure to Object to Closing Arguments – Cause for Procedural Default of Claim 3

Petitioner also contends his lawyer's performance was deficient because he failed to object to the prosecutor's improper closing arguments. Petitioner contends that "the prosecutor referred to instances which were either to be disregarded or not presented during the course of trial" and, further, made "improper and prejudicial remarks" during his rebuttal argument.[125] He claims trial

---

[125] Rec. Doc. 1, p. 55.

counsel told him that they could not interrupt the closing arguments and that the jury would be instructed that closing arguments are not to be considered as evidence. Petitioner claims that he does not recall what the prosecutor stated, as he does not have a copy of the transcript, but that trial counsel told him he would address the matter prior to the jury retiring. However, defense counsel did not address it with the trial court before the jury retired to deliberate nor did he raise the issue in the motion for new trial.

It is clear that "[a] decision not to object to a closing argument is a matter of trial strategy," and, as such, is accorded great deference. Drew v. Collins, 964 F.2d 411, 423 (5th Cir. 1992); see also Burnett v. Collins, 982 F.2d 922, 930 (5th Cir. 1993); Spicer v. Cain, Civ. Action No. 07–3770, 2007 WL 4532221, at *10 (E.D. La. Dec. 19, 2007); Rios–Delgado v. United States, 117 F.Supp.2d, 581 589 (W.D. Tex. Oct. 11, 2000). Even where an objection might have some chance of succeeding, an attorney is allowed to make a strategic choice to forgo such an objection to avoid antagonizing the jury. See Wiley v. Puckett, 969 F.2d 86, 102 (5th Cir. 1992); see also Spicer, 2007 WL 4532221, at *10.

"[C]ounsel's failure to object to improper remarks by a prosecutor is not ineffective assistance unless the remarks are so prejudicial as to render the trial fundamentally unfair." Jones v. Estelle, 632 F.2d 490, 492–93 (5th Cir. 1980). Due process requires reversal when the prosecutor's argument or comments "so infect the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181 (1986); Bell v. Lynaugh, 828 F.2d 1085, 1095 (5th Cir. 1987). The prosecutor's remarks must be evaluated in the context of the entire trial. Greer v. Miller, 483 U.S. 756, 765–66 (1987) (citing Darden, 477 U.S. at 179); Kirkpatrick v. Blackburn, 777 F.2d 272, 281 (5th Cir. 1985). "[It] is not enough that the prosecutors' remarks were undesirable or even universally condemned." Darden, 477 U.S. at

181 (citations and quotations omitted).  To obtain federal habeas relief based on allegations of improper prosecutorial comment or argument, a petitioner "must demonstrate that the misconduct [was] persistent and pronounced or that the evidence of guilt was so insubstantial that the conviction would not have occurred but for the improper remarks." Jones, 864 F.2d at 356; Hogue v. Scott, 874 F. Supp. 1486, 1533 (N.D. Tex. 1994).

Petitioner fails to point to any specific comments made during the prosecution's closing argument or rebuttal that he contends constituted prosecutorial misconduct.  Petitioner claims he was unable to be specific about prosecutorial misconduct because he was denied a transcript by the state district court.

The closing argument transcript originally was not part of the appellate record when petitioner was represented by counsel.  After petitioner's appellate counsel filed his brief, the state moved to suspend the briefing schedule to supplement the record with a transcript of closing arguments. [126]  The state argued that the closing arguments, particularly the arguments made to the jury concerning Wilford's testimonial demeanor, would assist the appellate court "in reviewing the rationality of the jury's verdict in this case." [127]

After the record was supplemented with a transcript of the closing arguments, the state filed its brief.  Thereafter, petitioner's appellate counsel did not file a supplemental brief, however, petitioner filed his own pro se supplemental brief.  Despite the availability of the transcript, the record does not reflect that petitioner requested a copy of the transcript of closing arguments before he filed his pro se supplemental appellate brief.  Nonetheless, he did file his own brief raising two issues, but did not raise the issue of prosecutorial misconduct during closing arguments.

---

[126] State Rec, Vol. 6 of 13, Motion to Suspend the Briefing Schedule and Supplement the Record on Appeal dated December 18, 2013.
[127] Id.

Petitioner requested a copy of the transcript of closing arguments when he filed his application for post-conviction relief.[128]  The state district court found that he had failed to show a particularized need for the transcript as his claim of prosecutorial misconduct was procedurally barred and, alternatively, completely unsubstantiated.[129]

Under Louisiana law a defendant does not have an automatic right to demand transcripts free of charge from the State.  See State ex rel. Bernard v. Criminal District Court Section "J", 653 So.2d 1174, 1175 (La. 1995); State v. Anderson, 714 So.2d 766, 769 (La.App.3d Cir.1998), writ denied, 726 So.2d 25 (La.1998).  Rather a defendant must demonstrate a particularized need for the transcripts.  See Bernard, 653 So.2d at 1175; Anderson, 714 So.2d at 769.  To the extent petitioner argues that the state district court erred in denying his request for a free transcript under Louisiana law, the claim fails.  The state court's interpretation and application of its own laws is a matter of state concern only.  "[I]t is not the province of a federal habeas court to reexamine state-court determination on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  Estelle v. McGuire, 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991).

There is also no general due-process right of access to state-court records on collateral review in criminal proceedings.  See, e.g., United States v. MacCollom, 426 U.S. 317, 323-24 (1976) (no constitutional right to transcripts on collateral review of a conviction; a federal petitioner on collateral review must demonstrate that his claims are not frivolous and that transcripts are needed to prove his claims before he is entitled to a free copy of pertinent transcripts); Deem v. Devasto, 140 F. App'x 574, 575 (5th Cir. 2005); Cook v. Cain, 15-1882,

---

[128] State Rec., Vol. 9 of 16, Motion for Production of Documents Under Particularized Need dated November 17, 2016.
[129] State Rec., Vol. 9 of 13, Order dated March 9, 2017.

2015 WL 6702290, at *2 (E.D. La. Nov. 3, 2015).  An indigent defendant does not have an absolute right under federal law to a copy of trial transcripts or other record documents in connection with post-conviction or other collateral review proceedings.  See Yates v. Collins, 988 F.2d 1210, 1993 WL 82111 (5th Cir. 1993) (indigent defendant not entitled to a free transcript if he had access to the record on direct appeal and fails to demonstrate that he requires the record to establish a non-frivolous post-conviction claim) (citing Smith v. Beto, 472 F.2d 164, 165 (5th Cir. 1973) (affirming the lower court's finding that there was no constitutional violation where the petitioner's attorney had access to the state-court record and trial transcripts on direct appeal and where "the petitioner did not need a transcript in order to establish his contention that he was denied effective counsel at his state trial")).  On collateral review, the burden is on the petitioner to positively demonstrate that there is a particularized need for the requested documents and transcripts and that the request is not frivolous.  MacCollom, 426 U.S. at 326; Smith, 472 F.2d at 165.

The closing arguments transcript is included in the record and was reviewed by the Court. Based on the unsubstantiated nature of the ineffective assistance of counsel claim, as explained below, petitioner has not met his burden of showing particularized need for the transcript nor has he shown how his claim would be viable if he had access to the closing arguments transcript.

The Court has reviewed the entirety of the transcript of the closing arguments, including rebuttal by the state.[130]  The transcript does not support petitioner's claim, based on his memory, that the prosecution made improper or inappropriate comments.  The arguments made did not misstate the evidence, and the state's rebuttal to the defense closing served to emphasize that defense counsel's argument was not supported by the evidence.  Additionally, the jury was instructed that the attorneys' arguments were not evidence,[131] and there is no reason to believe that

---

[130] State Rec., Vol. 6 of 13, closing argument transcript of February 27, 2013.
[131] State Rec., Vol. 8 of 13, jury instructions (undated), p. 19.

they disregarded that instruction.  Weeks v. Angelone, 528 U.S. 225, 234 (2000) ("A jury is presumed to follow its instructions.")

Because there was no misconduct in the manner in which the closing and rebuttal arguments were made, petitioner's counsel cannot be faulted for failing to object to the arguments or raise the issue in a motion for new trial  As petitioner has not established ineffective assistance of counsel with regard to closing arguments, he has not established cause for the procedural default of his prosecutorial misconduct claim.

### 3.    Failure to Fully Present Insufficiency of the Evidence on Appeal

Petitioner's final claim of ineffective assistance is that his appellate counsel failed to "fully" present the issue of insufficient evidence on appeal.[132]  He contends that appellate counsel failed to acknowledge the number of inconsistencies throughout the trial.

It is clear that appellate counsel "is not obligated to urge on appeal every nonfrivolous issue that might be raised (not even those requested by defendant)."  West v. Johnson, 92 F.3d 1385, 1396 (5th Cir. 1996).   Rather, "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."  Jones v. Barnes, 463 U.S. 745, 751-52, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983).   Far from evidencing ineffectiveness, an appellate counsel's restraint often benefits his client because "a brief that raises every colorable issue runs the risk of burying good arguments ... in a verbal mound made up of strong and weak contentions." Id. at 753, 103 S.Ct. 3308.  Rather, the applicable test to be applied in assessing such a claim is instead whether the issue ignored by appellate counsel was "clearly stronger" than the issues

---

[132] Rec. Doc. 1, p. 42-43, 51.

actually presented on appeal.  See, e.g., Diaz v. Quarterman, 228 Fed. App'x 417, 427 (5th Cir. 2007); accord Smith v. Robbins, 528 U.S. 259, 288, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000).

On appeal, appellate counsel argued that the verdict was contrary to the law and evidence, and the state district court erred in denying the motion for post-verdict judgment of acquittal, motion for new trial, and the motion to suppress identification.[133]  With regard to the first three issues, appellate counsel detailed the testimony of each of the witnesses and, contrary to petitioner's claim, pointed out the conflicts and inconsistencies in the testimony.  He attacked the credibility of Mitchell and Berry.  He argued that Wilford's trial testimony that petitioner's brother was the perpetrator was more credible than her initial statement identifying petitioner as the person who shot the victim.  He further argued that Williams's testimony was corroborated by the testimony of Walker, Joseph, Gillard, Gourgis, and Duplessis.  Finally, appellate counsel pointed to the lack of physical and scientific evidence linking him to the murder.  Petitioner filed a pro se brief in which he also raised insufficiency of the evidence.  He similarly attacked the credibility of Mitchell, Berry and Wilford.[134]  As previously explained in detail, the Louisiana Fifth Circuit addressed these claims and found them to be meritless.

Petitioner offers no support as to how his counsel's presentation of his insufficiency of the evidence claim on appeal was inadequate or how he should have couched the claims differently. While the claim was ultimately found to be without merit, petitioner fails to establish a reasonable probability that, but for the manner in which his counsel addressed the issue on direct appeal, he would have prevailed on appeal.

---

[133] State Rec., Vol. 5 of 13, appellate brief, 13-KA-818, filed December 9, 2013.
[134] State Rec., Vol. 5 of 13, pro se appellate brief, 2013-KA-0818, signed March 17, 2014.

Petitioner has not demonstrated that the state courts' decision rejecting this ineffective assistance of appellate counsel claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

### **RECOMMENDATION**

It is therefore **RECOMMENDED** that the federal application for habeas corpus relief filed by Adrian Williams be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); see Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this  3rd   day of July 2019.


_____
**JANIS VAN MEERVELD**
**UNITED STATES MAGISTRATE JUDGE**